IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| BRIAN BARTON, *et al*. | § | |
| | § | |
| vs. | § | CASE NO. 6:15cv733 |
| | § | |
| NABORS DRILLING TECHNOLOGIES USA, INC. | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiffs' Opposed Motion for Conditional Certification and Notice to Potential Plaintiffs (ECF 50). Plaintiffs filed this lawsuit seeking relief pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"). Having considered the briefing and the arguments of counsel, it is recommended that the motion be **GRANTED**.

**Background**

Plaintiffs filed this lawsuit as a collective action seeking to recover overtime pay on behalf of the named plaintiffs and any other similarly situated current and former employees that would opt-in to the lawsuit. The only remaining defendant in the case is Nabors Drilling Technologies USA, Inc. ("Nabors").[1]

Plaintiffs are seven welders that worked on Nabors' drilling rigs. Plaintiffs state that they were paid on an hourly basis, regularly worked in excess of forty hours per week, and did not receive overtime pay. Plaintiffs assert that Nabors wrongly classified them as independent contractors instead of as employees. According to Plaintiffs, Nabors exercised control over the welders and the welders were financially dependent on Nabors. Plaintiffs contend that Nabors

---

[1] The Court dismissed Defendant Express Payroll, Inc. on July 22, 2016 (ECF 93) and the Court dismissed Defendants Nabors Industries, Ltd., Nabors Industries, Inc. and Nabors Drilling USA, L.P. on July 25, 2016 (ECF 94).

1

exercised control over the welders by requiring the welders to follow its policies and attend safety meetings, by disciplining welders and controlling their work schedules, and by controlling the welders' hours and time off from work.

Together with the motion for conditional certification, Plaintiffs submitted affidavits from Plaintiffs Hardaway, Reed, Fuller and Barton describing each plaintiff's job duties and relationship with Nabors. Each plaintiff states that he is confident that there are a number of other current and former welders who performed similar work without overtime pay that would join the suit if they had notice. Plaintiffs also filed three "Notice of Consent" forms from three potential plaintiffs located in Oklahoma—Gaylen Doyle Branton, Waylon Cagle and Rodney Loar. Plaintiffs assert that Nabors generally employed 30–35 welders in Oklahoma City, Oklahoma during their tenure and employed additional welders in Crosby, Texas. Hardaway, Reed, Fuller and Barton each state that he was employed at the Nabors yard in Oklahoma City and that he was laid off by Nabors in July 2015. With regard to the Crosby site, these plaintiffs state in their affidavits that they "have also heard Nabors employs other welders to work in a yard in or around Crosby, Texas who are paid as independent contractors."[2] Plaintiffs seek Court approval for notice to potential plaintiffs and an order directing Nabors to disclose the full name, last known address, last known telephone number, and social security number or date of birth for all welders who were paid as independent contractors and performed work for Nabors in Crosby and Oklahoma City from January 1, 2013 to present.

In response, Nabors argues that the affidavits submitted with the motion for conditional certification do not establish that the plaintiffs are similarly situated to other welders or that other welders want to opt-in to the lawsuit. Nabors asserts that the inquiry into whether welders are independent contractors or employees is fact-intensive and individualized, such that the

---

[2] *See, e.g.*, Declaration of Brian Barton, ECF 50-4, at *p. 3.

determination should be made on a case-by-case basis. According to Nabors, welders purchase and customize at least some of their own equipment, provide their own personal protective equipment, are not required to work solely for Nabors and have the opportunity to work as much or as little as they choose. Nabors submits that the invoices submitted by Plaintiffs show variance in the work patterns of Hardaway, Reed, Fuller and Barton. These welders allegedly billed Nabors for varying days and hours.

With regard to the Crosby site, Nabors submits that the statement that Plaintiffs have heard that there are welders at that site is insufficient to support an assertion that these welders are similarly situated and have an interest in joining the lawsuit. Nabors additionally asserts in the response that Plaintiffs named the wrong defendants—Nabors Industries, Ltd. and Nabors Industries, Inc. Plaintiffs subsequently amended the complaint, however, to name Nabors Drilling Technologies USA, Inc., the owner and operator of the Oklahoma City yard, as the defendant.

## Applicable Law

Pursuant to the FLSA, non-exempt employees are to receive overtime pay from their employer for work exceeding forty hours in a workweek. 29 U.S.C. § 207(a). Aggrieved employees may bring suit for a violation of § 207 to recover unpaid overtime compensation. 29 U.S.C. § 216(b). Suit may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Id*.

The FLSA requires potential plaintiffs to consent or "opt-in" to a collective action. 29 U.S.C. § 216(b). As a result, plaintiffs typically seek notification for potential plaintiffs. District courts have discretion to allow a party asserting FLSA claims on behalf of others to notify potential plaintiffs that they may choose to "opt-in" to the suit. *See Hoffman-La Roche, Inc. v.*

*Sperling*, 493 U.S. 165, 169 (1989). Although the Fifth Circuit has not set out a specific standard or procedure for determining when class certification or court-facilitated notice is appropriate, district courts in the Fifth Circuit routinely apply a two-stage approach. *See, e.g., Dyson v. Stuart Petroleum Testers,* 2015 WL 5062265 (W.D. Tex. Aug. 27, 2015); *Vassallo v. Goodman Networks, Inc.,* 2015 WL 3793208 (E.D. Tex. Jun. 17, 2015)*; Valcho v. Dallas County Hospital District*, 574 F.Supp.2d 618, 621 (N.D. Tex. Aug. 19, 2008); *Dreyer v. Baker Hughes Oilfield Operations*, 2008 WL 5204149 (S.D. Tex. Dec. 11, 2008).

The two-stage approach, referred to as the *Lusardi*[3] approach, comprises of a "notice" stage and a "decertification" stage. *Mooney v. Aramco Servs. Co*., 54 F.3d 1207, 1213 (5th Cir. 1995), overruled on other grounds (*Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148 (2003)). The notice stage involves determining whether potential collective action members should be notified. The inquiry at this stage is whether a plaintiff has provided sufficient evidence of the existence of similarly situated potential plaintiffs to warrant court-facilitated notice. *Casanova v. Gold's Texas Holdings Group, Inc*., 2014 WL 6606573, at *2 (W.D. Tex. Nov. 19, 2014); *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010). Establishing that potential plaintiffs are similarly situated at the notice stage may be accomplished by showing that there is "(1) . . . a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit." *Id*. (quoting *Walker v. Honghua Am., LLC*, F.Supp.2d 462, 465−66 (S.D. Tex. May 7, 2012)).

Notice is not automatic, but a lenient standard is applied at this stage of review. *Valcho*, 574 F.Supp.2d at 621; *Aguilar*, 2004 WL 2293842, slip op. at *2; *Mooney v. Aramco Svcs. Co*.,

---

[3] *Lusardi v. Xerox, Corp*., 118 F.R.D. 351 (D. N.J. Nov. 5, 1987).

54 F.3d 1207, 1214 (5th Cir. 1995) (*overruled on other grounds*, *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148 (2003) ("Because the court has minimal evidence, [the first] determination is made using a fairly lenient standard"). In *Mooney*, an ADEA case utilizing the same two-stage process for an opt-in collective action, the Court noted that the district court makes its decision at the notice stage "usually based only on the pleadings and any affidavits which have been submitted." *Mooney*, 54 F.3d at 1214.

If a plaintiff successfully provides sufficient evidence of the existence of similarly situated potential plaintiffs to warrant court-facilitated notice, the class is conditionally certified. *Allen v. McWane, Inc.*, 2006 WL 3246531, at *2 (E.D. Tex. Nov. 7, 2006). Notice should then be provided to potential class members and they should be given a period of time to opt in to the lawsuit. *Mooney*, 54 F.3d at 1213−14.

Certification may then be re-examined at the decertification stage after notice is provided, class members have been given the opportunity to opt in to the lawsuit and discovery is complete. At that point, a defendant may seek to de-certify the class and a final determination may be made concerning whether the representative plaintiffs and the plaintiffs who have chosen to "opt-in" are sufficiently similarly situated so that the lawsuit can proceed as a collective action. *See Dreyer*, 2008 WL 5204149, slip op. at *1; *Valcho*, 574 F.Supp2d. at 621. It is at the decertification stage that the district court considers and fully evaluates the merits of the class certification. *Dyson*, 308 F.R.D. at 513.

**Analysis**

**A. Whether there is a reasonable basis for Plaintiffs' assertions that aggrieved individuals exist**

Plaintiffs argue that there is a reasonable basis for their assertion that "aggrieved individuals exist."[4] Plaintiffs allege in their pleadings that Nabors classifies the welders at the Oklahoma City and Crosby yards as independent contractors, yet exercises control over them and treats them as employees. In support of those allegations, Plaintiffs submitted four declarations from named plaintiffs that worked at Nabors' Oklahoma City yard. All four declarations state "[t]o my knowledge, all of the welders worked more than 40 hours most, if not all weeks" and that they are not aware of any "who worked in the yard, [that] ever received time and one-half overtime pay for the hours worked in excess of 40 in a given workweek."[5]

Nabors does not dispute that there are other current or former welders at the Oklahoma City yard who are or were classified as independent contractors. Instead, they argue that the welders provide contract services. The pleadings and affidavits submitted by Plaintiffs assert that Nabors applied the same policy of misclassification to them as it applied to the other welders that are allegedly misclassified as independent contractors. They also assert that all of the welders worked in excess of 40 hours and did not receive overtime pay. At this stage of the proceedings, it is inappropriate to evaluate the merits of the fact-specific inquiry into whether Nabors' welders are ultimately exempt from the FLSA. *Casanova*, 2014 WL 6606573, at *9. In light of the lenient standard applied at the notice stage, the declarations provide a sufficient basis upon which to conclude that there is a reasonable basis to find that other aggrieved individuals exist at the Oklahoma City yard. Plaintiffs' conclusory assertions, however, that they have

---

[4] *See Casanova*, 2014 WL 6606573, at *2.
[5] *See, e.g., Declaration of Dallas Hardaway*, ECF 50-1, at *3.

"heard" that there are welders at the Crosby yard is insufficient to credit their assertion that aggrieved individuals exist at the Crosby yard.

### B. Whether the aggrieved individuals are similarly situated to Plaintiffs in relevant respects

Next, the Court considers whether those aggrieved individuals are similarly situated to the named plaintiffs in relevant respects. In its response, Nabors argues that certification is often inappropriate when, as here, the ultimate issue concerns whether the affected workers were misclassified as independent contractors. Relying on *Andel v. Patterson-UTI Drilling Co.*, 280 F.R.D. 287 (S.D. Tex. Feb. 15, 2012), Nabors asserts that the Court must make a determination as to whether Plaintiffs' proof that they are misclassified as independent contractors instead of employees also applies to the putative plaintiffs. Nabors argues that the economic realities test used to evaluate whether workers are independent contractors or employees is fact-intensive and requires an individualized analysis. Nabors asserts that there are variations in the number of hours and days worked by Plaintiffs' declarants and that there are variations within each declarant's own schedule. Nabors submitted a declaration from the manager of the Oklahoma City yard, Dean Sherrill. Sherrill asserts that the invoices submitted by Plaintiffs' declarants to Nabors show that these welders worked varying days and hours. According to Sherrill, the declarants did not consistently bill in excess of forty hours per workweek and did not work every week.

Applying the lenient standard applicable at this stage, the relevant inquiry is whether the potential class members performed the same basic tasks and were subject to the same pay practices. *Owen v. Golf & Tennis ProShop, Inc.*, 2010 WL 3859640, at *3 (E.D. Tex. Sept. 30, 2010) (citing *Allen*, 2006 WL 3246531, at *3). The requirement is that the putative plaintiffs be similarly situated, not identically situated. *In re Wells Fargo Wage & Hour Employment*

*Practices Litig. (No. III)*, 2012 WL 3308880, at *27 (S.D. Tex. Aug. 10, 2012). Plaintiffs submitted evidence, in the form of declarations, that there are other welders at the Oklahoma City yard that performed the same basic tasks and were subject to the same pay practices. "Notice is appropriate if the court concludes there is 'some factual nexus which binds the named plaintiffs and potential class members together as victims of a particular alleged [policy or practice].'" *Vassallo,* 2015 WL 3793208, at *11–12 (quoting *Allen*, 2006 WL 3246531, at *2).

Plaintiffs met their burden of showing that there are aggrieved welders at the Oklahoma City yard that are similarly situated to them in relevant respects. The merits of Plaintiffs' claim that the welders should have been classified as employees instead of independent contractors is more appropriately considered in the merits stage of the proceeding after discovery is compete. *Dyson*, 308 F.R.D. at 513. Plaintiffs have not produced evidence, however, that there are aggrieved welders at the Crosby yard that are similarly situated to them in relevant respects.

### C. Whether those individuals want to opt-in to the lawsuit

Plaintiffs submitted three consent forms to establish that there are other potential plaintiffs that want to opt-in to this lawsuit. The consent forms show that there are other welders at Nabors' Oklahoma City yard classified as independent contractors that believe they were also subjected to Nabors' alleged policy of misclassification. Plaintiffs met the necessary showing for the notice stage with regard to welders at the Oklahoma City yard. Plaintiffs have not shown that there are other potential plaintiffs at the Crosby yard that want to opt-in to the lawsuit.

In sum, Plaintiffs proffered sufficient evidence to warrant notice to Nabors' Oklahoma City welders. Many of the arguments made by Defendants in opposition to the motion concern either ultimate issues in the case regarding whether overtime pay was wrongly denied or issues that are more appropriate for a de-certification proceeding at a later time.

## **RECOMMENDATION**

It is accordingly recommended that the Opposed Motion for Conditional Certification and Notice to Potential Plaintiffs (ECF 50) be **GRANTED in part**. The conditional class should include welders that worked at Nabors' Oklahoma City yard January 1, 2013 to present. The motion should be **DENIED** as to the welders that worked at the Crosby yard. Nabors should be ordered to disclose to Plaintiffs the last known addresses, phone numbers, and dates of birth or social security numbers for welders paid as independent contractors that performed work at the Oklahoma City yard from January 1, 2013 to present. Further, the parties should be ordered to meet and confer regarding the Notice to Potential Plaintiffs and submit a draft of the proposed notice. To the extent the parties cannot agree after their meet and confer conference, the parties shall notify the Court as to the specific areas lacking agreement for the Court's consideration.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 16th day of August, 2016.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE